UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **OVERSTOCK.COM, INC.,** <br><br> Plaintiff, <br><br> v. <br><br> **VIKTOR VISOCKY,** *et al.***,** <br><br> Defendants. | Civil Action No. 1:17-cv-1331-LMB-TCB |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**
**AND INCORPORATED MEMORANDUM IN SUPPORT**

Plaintiff Overstock.com, Inc. ("Overstock"), by counsel, and pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, moves for entry of default judgment against all Defendants. In support, Overstock states as follows:

**FACTUAL BACKGROUND**

The following facts are alleged in the Third Amended Complaint (Dkt. 88)[1] and are now deemed admitted: Overstock operates a shopping website, www.overstock.com ("Overstock.com"), which contains depictions of Overstock's Trademarks, Trade Dress, and Copyrighted Content. Third Amended Compl., Dkt. 88 ("Compl.") ¶¶ 1, 14. Without authorization, Defendants "ripped", or copied, Overstock's entire website—including its text, images, trademarks, videos, underlying code, and other copyrighted materials—and republished the material on websites they created. Compl. ¶¶ 2-5, 15-151. The purpose of this "phishing"

---

[1] All defendants were served with a copy of the complaint by email when added to the case, as permitted by the Court. Overstock has amended its complaint three times to add new defendants and infringing website domain names. In each of those amendments, no additional claims were added against the existing defendants. Rather, new defendants and websites were added as additional websites were uncovered as part of the same ripping scheme. All Defendants have also been served via email with the April 9, 2018 Third Amended Complaint and April 12, 2018 Order Modifying Preliminary Injunction. *See* Declaration of Kevin W. Weigand, Dkt. 100.

1

scheme was to trick consumers into thinking they are at a website affiliated with Overstock, leading them to provide Defendants with their private personal and financial data (including credit card numbers) without ever receiving the products or services they tried to order. Compl. ¶¶ 3-4, 200, 236. After spending significant financial and human capital investigating Defendants, including making controlled purchases and analyzing the infringing websites, Overstock has confirmed that the websites are not affiliated with, or authorized by Overstock. Compl. ¶¶ 5-6, 209-10. Overstock has suffered harm to the value and goodwill associated with its trademarks and its reputation in the industry, and to its ability and right to control the quality of its online retail services. Compl. ¶¶ 232–238. Overstock has suffered actual damages in the form of lost sales, revenues, and profits, as well as immediate and irreparable harm for which Overstock has no adequate remedy at law.  Compl. ¶ 238.

## PROCEDURAL BACKGROUND

1. On November 21, 2017, Overstock sued Defendants and moved, *ex parte*, for a temporary restraining order, preliminary injunction, and additional relief ("TRO Motion"). Dkts. 1, 12, 13. The TRO Motion was intended to prevent Defendants from continuing to counterfeit Overstock's Trademarks, Copyrighted Content, and Trade Dress on the phishing websites mimicking Overstock's website, Overstock.com.

2. On November 21, 2017, the Court granted the TRO Motion. Dkt. 14.

3. On December 1, 2017, the Court held a show cause hearing, and no Defendant appeared or opposed entry of a preliminary injunction.  Dkt. 21. The Court entered a Preliminary Injunction against the then-existing defendants, prohibiting them from continuing to operate the infringing websites and from creating new infringing websites (among other things).  Dkt. 22.

4. The TRO Order provides at page 16 ("Later-Identified Accounts") that Overstock may locate "additional domain names, associated websites, and accounts properly brought to this

Court's attention and verified by affidavit" to be part of the scam and related to the infringing websites, and those additional Later-Identified Accounts may be added to any TRO Order or the Preliminary Injunction. Dkt. 14 at 16.

5. On that basis, Overstock moved to modify the Preliminary Injunction three times—on December 7, 2017 (Dkts. 23-25), January 11, 2018 (Dkts. 28-30), and March 2, 2018 (Dkts. 72-74)—after it found that Defendants were willfully violating the TRO Order/Preliminary Injunction by creating new Infringing Websites, and hosting them using newly registered domain names.

6. In connection with these motions, Overstock presented evidence in the form of forensic investigator declarations, establishing that the additional Infringing Websites were identical in layout to, and part of the same phishing scam as, the original Infringing Websites (*i.e.*, ripping Overstock.com, phishing for consumers' credit card and personal identifying information, and counterfeiting the Overstock Trademarks, Copyrighted Content, and Trade Dress).

7. The sworn testimony and evidence setting forth the details of Defendants' unlawful behavior can be found in the Declarations of Carter Lee—Overstock's Senior Vice President of Technology and People Care—and Robert Holmes, Jr.—a private investigator specializing in intellectual property theft via the Internet and founder and CEO of IPCybercrime.com LLC. Dkts. 10, 11, 20-2, 24, 29, 73, 92. Overstock has re-attached those declarations to this Motion as Appendix A through G.[2]

---

[2] Overstock has not included the supporting exhibits to each of those declarations in the Appendix due to length (1,082 pages), but all declarations and exhibits are on the public docket and Overstock can provide courtesy copies to the Court upon request.

8. The Court granted all three motions to modify the preliminary injunction, and after the first motion, required Overstock to file amended pleadings to add newly discovered Infringing Websites as Defendants. Dkts. 27, 33, 79.

9. On April 9, 2018, Overstock filed its Third Amended Complaint. Dkt. 88.

10. On April 12, 2018, the Court entered an order modifying the preliminary injunction to extend its application to the newly-added defendants. Dkt. 95.

11. All defendants have been properly served with the Complaint adding them as a party to the case, (Dkts. 19, 83, 84, 85, 96) and the most current Complaint (Dkt. 100).

12. No Defendant has responded to the Complaint or otherwise appeared, and the Clerk entered default against all Defendants on July 3, 2018. Dkt. 102.

## ARGUMENT

### I. Legal Standard

"Where a defendant fails to plead or otherwise defendant itself, default judgment is warranted." *Toolchex, Inc. v. Trainor*, 2009 WL 2244486, at *1 (E.D. Va. July 24, 2009) (granting default judgment and entering permanent injunction in trademark infringement claim); *see also EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497 (E.D. Va. 2009) (entering default judgment and awarding attorney's fees in copyright infringement claim); *Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505 (E.D. Va. 2003) (entering default judgment in trademark and copyright infringement claim).

This Court "must have both subject matter and personal jurisdiction over a defaulting party before it can render default judgment." *Unum Life Ins. Co. of Am. v. James*, 2015 WL 6439051, at *1 (E.D. Va. Oct. 21, 2015). "Where a defendant is in default, as here, the facts set forth in the plaintiff's complaint are deemed admitted if the plaintiff's complaint sets forth a proper claim." *EMI Apr. Music,* 618 F. Supp. 2d at 505. However, "[b]efore entering default

judgment, … the Court must evaluate the plaintiff's complaint to ensure that the complaint properly states a claim." *Unum Life Ins. Co.*, 2015 WL 6439051, at *3.

## II.     This Court has Jurisdiction and Venue is Proper

**Subject matter jurisdiction.** This Court has original subject matter jurisdiction over Overstock's federal Lanham Act (15 U.S.C. §§ 1114 & 1125(a)), Computer Fraud and Abuse Act (18 U.S.C. § 1030(a)(5)(C), (g)), and Copyright Act (17 U.S.C. § 101 *et seq.*) claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 15 U.S.C. § 1121. This Court has subject matter jurisdiction over the remaining Virginia law claims pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a).

**Personal jurisdiction.** This Court has personal jurisdiction over all Defendants because each Defendant has had continuous, systematic, and substantial contacts within the Commonwealth of Virginia, including doing business in Virginia and targeting consumers in Virginia, and causing harm to Overstock's business within this Judicial District.  Each Defendant has targeted sales to Virginia consumers by operating fully interactive online retail stores that claim to offer shipping to Virginia and payment in U.S. dollars. Additionally, personal jurisdiction is proper because the Defendants maintain Internet domains registered in Virginia, engage in other conduct availing themselves of the privilege of conducting business in Virginia, and have utilized instrumentalities located in Virginia and the Eastern District of Virginia to carry out the acts of which Overstock complains.  By creating and operating the Infringing Websites accessible via ".com" domain names, Defendants maintain Internet domains registered in Virginia. The domain name registry that oversees the registration of all domain names ending in ".com" is located in the Eastern District of Virginia, and the ".com" registry domains are maintained through facilities in the Eastern District of Virginia.  The few Infringing Websites with non-.com gTLDs (.online, .site, and .club) have the same infringing content and are part of

the same phishing scheme as the .com gTLD Infringing Websites, and thus, involve facilities in the Eastern District of Virginia.

**Venue.** Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Overstock's claims has occurred in this Judicial District, a substantial part of the property that is the subject of Overstock's claims is situated in this Judicial District (.com gTLD domain names used to perpetuate Defendants' phishing scam and counterfeiting of Overstock.com), and a substantial part of the harm caused by Defendants has occurred in this Judicial District.

### III. Overstock properly states claims for each of its five causes of action

Overstock seeks default judgment on its claims for (1) Trademark Infringement (15 U.S.C. § 1114); (2) Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030(a)(5)(C)); (3) Copyright infringement (17 U.S.C. § 101, *et seq.*); (4) False designation of origin, unfair competition, and trade dress infringement (15 U.S.C. § 1125(a)); and (5) Common Law Trademark Infringement and Unfair competition.

**Count One: Trademark Infringement:** Count One alleges that Defendants are liable for trademark infringement under the Lanham Act. 15 U.S.C. § 1114. The Lanham Act prohibits the reproduction, counterfeiting, copying, or production of a "colorable imitation" of a registered mark in connection with the distribution of goods and services where such is likely to cause confusion, mistake, or to deceive. 15 U.S.C. § 1114(1). To recover on a claim of trademark infringement under the Lanham Act, a plaintiff must show "(1) that it owns a valid mark; (2) that the defendant used the mark 'in commerce' and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (4) that the defendant's use of the mark is

likely to confuse consumers." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012) (citing 15 U.S.C. § 1114(a)).[3]

The allegations, which are now admitted, show that each of these elements are satisfied. Overstock owns the registered Overstock Trademarks and Trade Dress. Compl. ¶¶ 14, 167-73, 176, 270. These marks are valid, protectable, and, until now, exclusively used by Overstock. Compl. ¶¶ 167-73, 176, 240-41. Overstock's allegations, supported through evidence in the form of declarations relating to controlled buys, show that Defendants used the registered Overstock Trademarks in commerce without Overstock's permission. Compl. ¶¶ 240, 256. Defendants' use of the marks and the Overstock Trade Dress causes confusion, namely, over whether Overstock operates the Infringing Websites. Compl. ¶¶ 4, 269. Thus, there is no question that Defendants' actions have violated the Lanham Act. *See also Microsoft Corp. v. John Does 1-2*, 2017 WL 3605317 (E.D. Va. Aug. 22, 2017) (Lee, J.) (granting default judgment on Lanham Act claims where defendants used counterfeit versions of plaintiff's marks on websites and emails to deceive consumers into providing sensitive information or infecting their computers with a virus); *Microsoft Corp. v. John Does 1-18*, 2014 WL 1338677 (E.D. Va. Apr. 2, 2014) (Brinkema, J.) (granting default judgment on Lanham Act claims where defendants created and distributed unauthorized copies of plaintiff's registered marks through websites bearing these counterfeit marks, deceiving consumers in the process); *Otels, Inc. v. Altun*, 2012 U.S. Dist. LEXIS 114584, at *12 (E.D. Va. Aug. 14, 2012) (Trenga, J.) (granting default judgment on Lanham Act claims where defendant used a strikingly similar mark to plaintiff's trademark in its

---

[3] *See also Thompson v. Haynes*, 305 F.3d 1369, 1378 (Fed Cir. 2002) (holding that "[l]ikelihood of confusion 'forms the gravamen' for an action under [Section] 43(a) of the Lanham Act"); *Swatch, S.A. v. Beehive Wholesale, L.L.C.*, 888 F. Supp. 2d 738, 746 (E.D. Va. 2012) ("In order to prevail on claims of trademark infringement and unfair competition under the Lanham Act, [...] a plaintiff must ... show 'that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers.'").

domain name and on its website, where it used confusingly similar website advertising, and where its website was likely to confuse consumers into thinking it was affiliated with plaintiff). Thus, Overstock properly pleads a claim for trademark infringement under the Lanham Act.

**Count Two: Violation of Computer Fraud and Abuse Act**: The Computer Fraud and Abuse Act ("CFAA") prohibits, among other things, intentionally accessing a protected computer without authorization, and as a result of such conduct, causing damage. 18 U.S.C. § 1030 (a)(5)(C). Under this framework, a "protected computer" is one "which is used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B). Courts have consistently recognized that corporate computers hosting website data or connected to the Internet are valid "protectable computers" under this provision. *See, e.g.*, *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007); *Estes Forwarding Worldwide LLC v. Cuellar,* 239 F. Supp. 3d 918, 926 (E.D. Va. 2017); *Simmonds Equipment, LLC v. GGR Intern., Inc.*, 126 F. Supp. 3d 855, 863 (S.D. Tex. 2015).

Here, Overstock's computers, which enable the shopping website Overstock.com, are "protected computers" under the CFAA. Compl. ¶ 248. In "ripping" the entire content of Overstock.com, Defendants necessarily accessed these protected computers without permission. Compl. ¶¶ 249, 255-58.

Defendants' unauthorized access to, and use of, Overstock's computers and proprietary materials has caused significant harm to Overstock and consumers. Compl. ¶ 259. Specifically, by creating the Infringing Websites to steal consumers' data, Defendants damaged and tarnished the Overstock brand and Overstock's reputation for safe, secure shopping. Compl. ¶¶ 4-5, 174, 242, 259, 271. Defendants also depleted the consumer goodwill associated with the Overstock Trademarks and other source identifiers—which Overstock has worked painstakingly to develop.

Compl. ¶ 233. Moreover, Defendants' behavior harms consumers directly, as the goal of Defendants' scam is to collect and steal their data and their money, without providing goods or services in return. This precise type of conduct is actionable under the CFAA. *See, e.g., Microsoft Corp. v. John Does 1-2*, 2017 WL 3605317 (E.D. Va. Aug. 22, 2017) (Lee, J.) (finding a CFAA violation where defendants accessed Microsoft's and consumers' computers by reproducing and sending Microsoft trademarks and trade dress to consumers to trick them into downloading a virus); *Avvo Inc. v. Liang*, No. 2:16-cv-00892-DLR (D. Ariz. May 11, 2017) (finding a CFAA violation where defendants reproduced plaintiffs entire website without authorization as a phishing scheme to fool consumers into submitting sensitive information). Thus, Overstock has adequately pled a claim for violation of the Computer Fraud and Abuse Act.

**Count Three: Federal copyright infringement:** Under the Copyright Act, authors of original works fixed in a tangible medium possess exclusive rights, including the right to reproduce the work in question, to prepare derivative works, and to distribute copies of it. *See* 17 U.S.C. § 106. "To prove copyright infringement, a plaintiff must show that: (1) he or she owned the copyright to the work that was allegedly copied; and (2) the defendant copied protected elements of that work." *Levi v. Twentieth Century Fox Film Corp.*, 2018 WL 1542239, at *3 (E.D. Va. Mar. 29, 2018) (citing *Towler v. Sayles*, 76 F.3d 579, 581 (4th Cir. 1996)).

Here, Overstock has been the sole owner of all rights, title, and interest in the Overstock Copyrighted Content. Compl. ¶¶ 262-63. Defendants copied the entire source code and content (*e.g.*, text, photographs, videos, layout and design) of Overstock.com—a.k.a., the Overstock Copyrighted Content. Compl. ¶¶ 198, 264. Defendants reproduced the Content—obviously, without Overstock's permission—on each Infringing Website. The purpose of the copying was not to "transform" the content, but to make the Infringing Websites look as close as possible to

9

Overstock.com, so consumers would trust the Infringing Websites and, based on that trust, provide their financial information to Defendants under the belief that they were purchasing products from Overstock. This conduct plainly violates Overstock's copyrights in the Copyrighted Content. *See Avvo Inc. v. Liang*, No. 2:16-cv-00892-DLR (D. Ariz. May 11, 2017) (granting default judgment in favor of plaintiff's copyright claims where the defendant copied the plaintiff's copyrighted website layout, graphics, and text on a mirror phishing website); *accord Ranco Indus., Inc. v. Bos. Floor Mats*, 2011 WL 1237938, at *3 (S.D. Tex. Mar. 31, 2011) (granting default judgment and entering permanent injunction where defendants "infringed [plaintiff's] copyright by publishing a substantially similar website containing identical photographs and a substantially similar arrangement and text"); *Peri Hall & Assocs., Inc. v. Elliot Inst. for Soc. Scis. Research*, 2006 WL 742912, at *2 (W.D. Mo. Mar. 20, 2006) (entering preliminary injunction after the defendant created a website that "uses, mimics, and copies the look, feel, graphics, coding, and photos of the [plaintiff's] website" and was created to confuse the public into believing the two websites were affiliated). Thus Overstock has adequately pled a claim for violation of Copyright Act.

**Count Four: False designation of origin, unfair competition, and trade dress infringement:** Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), prohibits the use of any word, symbol, description, or misleading representation of fact that is likely to cause confusion, mistake, or deception regarding the connection, origin, or affiliation of goods or services. 15 U.S.C. § 1125(a). "Broadly speaking, the Lanham Act's dual purpose is to protect consumers from being misled by the use of infringing marks and to protect producers from unfair practices by an imitating competitor." *Buffalo Wings Factory, Inc. v. Mohd*, 622 F. Supp. 2d 325, 332 (E.D. Va. 2007) (citing *Moseley v. V Secret Catalogue, Inc.,* 537 U.S. 418, 428 (2003))

10

(internal quotation marks omitted). The Act has also been construed to protect against trademark infringement even if the mark is not federally registered. *Id.* (citing *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 124 (4th Cir.1990)).

The required elements of a Lanham Act "claim of unfair competition and false designation of origin are essentially the same as the elements for a claim of infringement of a registered trademark under the Lanham Act." *Nationstar Mortg., LLC v. Ahmad,* 155 F. Supp. 3d 585, 592 (E.D. Va. 2015) (citing *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 300 (4th Cir. 2012) (holding that "to prevail under . . . 43(a) of the Lanham Act for trademark infringement and unfair competition . . . a complainant must demonstrate that it has a valid, protectable trademark and that the defendant's use of a colorable imitation . . . is likely to cause confusion among consumers")).

Overstock asks the Court to grant default judgment on its claim under 15 U.S.C. § 1125(a) for the same reasons as its claim under 15 U.S.C. § 1114. Without Overstock's permission, Defendants have used Overstock's Trademarks and trade dress in commerce to cause mistake or to deceive consumers regarding an affiliation with Overstock. Compl. ¶¶ 4, 269. Defendants' actions are willful and have harmed consumers and Overstock, including damage to Overstock's reputation and goodwill. Compl. ¶¶ 270-71. Default judgment is thus appropriate on Count Four of Overstock's complaint.

**Count Five: Common law trademark infringement and unfair competition**

"Under Virginia law, a claim for unfair competition is essentially identical to the elements of the same claim under the Lanham Act." *Nationstar Mortg., LLC v. Ahmad,* 155 F. Supp. 3d 585, 592 (E.D. Va. 2015); *see also Lamparello v. Falwell*, 420 F.3d 309, 312 n.1 (4th Cir. 2005) ("[A plaintiff's] state-law unfair competition claim rises or falls with [its] federal

11

claims of infringement and false designation of origin."); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995) ("The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved."). The only difference—which does not apply here because Overstock owns a registered trademark and is not required to prove secondary meaning—is that under Virginia law, the burden of persuasion to establish secondary meaning (or lack thereof) does not shift to the alleged infringer when there is evidence of intentional, direct copying. *See Nationstar Mortg.*, 155 F. Supp. 3d at 592.

As explained above, Overstock has satisfied all requisite elements of a trademark infringement by showing: that Overstock is the owner of a valid trademark; that Defendants used Overstock's trademark in commerce and without Overstock's authorization so consumers would trust the Infringing Websites and, based on that trust, provide their financial information to Defendants under the belief that they were purchasing products from Overstock; and that Defendants' use of the marks and the Overstock Trade Dress causes confusion over whether Overstock operates the Infringing Websites. Accordingly, entry of judgment in Overstock's favor on Count Five is appropriate for the same reasons stated with respect to Count One.

## IV.   Overstock is entitled to a permanent injunction

Overstock now seeks a judgment that permanently enjoins Defendants from pursuing their unlawful behavior. Overstock is not seeking monetary damages as part of its request for default judgment.

Overstock further requests that the Court order the permanent injunction to apply to all Later-Identified Accounts—including websites discovered by Overstock after entry of the permanent injunction order—that are owned or operated by, or affiliated with, any of the

Defendants. To enforce the Court's permanent injunction order to enjoin Later-Identified Accounts, Overstock requests that the Court permit Overstock to file a Motion for Contempt, with supporting evidence in the form of declarations, affidavits, or other evidence sufficiently showing that the Later-Identified Accounts are owned or operated by, or affiliated with, any of the Defendants.

## CONCLUSION

For the foregoing reasons, Overstock respectfully requests that the Court enter the attached permanent injunction order and order the Clerk to release the preliminary injunction bond posted by Overstock on November 24, 2017.

Dated: July 20, 2018

                          VENABLE LLP

                          /s/
                        Randall K. Miller (VSB No. 70672)
                        Kevin W. Weigand (VSB No. 81073)
                        8010 Towers Crescent Drive, Suite 300
                        Tysons Corner, VA 22182
                        Tel: 703-905-1449
                        Fax: 703-821-8949
                        rkmiller@venable.com
                        kwweigand@venable.com

                        Marcella Ballard (Admitted *pro hac vice*)
                        1270 Avenue of the Americas, 24th Floor
                        New York, NY 10020
                        Tel: 212-370-6289
                        Fax: 212-307-5598
                        mballard@venable.com

                        *Counsel for Plaintiff Overstock.com, Inc.*