## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| OVERSTOCK.COM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-1331 (LMB/TCB) |
| | ) | |
| VIKTOR VISOCKY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on Plaintiff's Motion for Default Judgment and Incorporated Memorandum in Support (Dkt. 116). After no representative for Defendant responded to Plaintiff's motion or appeared at the hearing on November 16, 2018, the matter was taken under advisement.[1] For the reasons stated below, the undersigned U.S. Magistrate Judge recommends that Plaintiff's Motion for Default Judgment be GRANTED.

### I. INTRODUCTION

#### A. Background

On November 21, 2017, Overstock.com, Inc. ("Plaintiff") filed its Complaint against Viktor Visocky ("Mr. Visocky"), Otto Srams ("Mr. Srams"), seventeen domain names, and John Does 1-10. The lawsuit alleged trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; violations of the Computer Fraud and Abuse Act (the "CFAA"), 18 U.S.C. § 1030(a)(5)(C); copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 101 et

---

1. Relevant filings before the Court include the Third Amended Complaint (Dkt. 88) ("3d Am. Compl."); Affidavit in Support of Request for Clerk's Entry of Default (Dkt. 114-1) ("Weigand Decl."); Plaintiff's Motion for Default Judgment and Incorporated Memorandum in Support (Dkt. 116) ("Mot. Default J."), and all attachments and exhibits submitted with those filings.

seq.; false design of origin, unfair competition, and trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and trademark infringement and unfair competition in violation of Virginia law. (Dkt. 1.) With approval of the Court, on January 20, 2018, Plaintiff filed its First Amended Complaint, adding Edward M. Kaufman ("Mr. Kaufman"), Olga Korischenko ("Ms. Korischenko"), Alexander Bekoev ("Mr. Bekoev"), and twenty-two additional domain names as defendants. (Dkt. 37.) Then, with approval of the Court, on February 26, 2018, Plaintiff filed its Second Amended Complaint, adding fourteen additional domain names as defendants. (Dkt. 70.) Finally, again with approval of the Court, on April 9, 2018, Plaintiff filed its Third Amended Complaint, adding ten additional domain names as defendants. (Dkt. 88.) In all, Plaintiff named sixty-three listed domain names (the "Infringing Websites") [2] in its Third Amended Complaint. Despite amending its complaint three times to add more defendants, at no point did Plaintiff add new claims.

On July 20, 2018, Plaintiff moved for Default Judgment against all Defendants (Dkt. 104). On August 23, 2018, the undersigned issued a Report and Recommendation, granting in part and

---

2. The sixty-three Infringing Websites are: <www.hilltopstock.com>, <www.barneystock.com>, <www.interstockonline.com>, <www.primestopstock.com>, <www.agdepotonline.com>, <www.fairpricestock.com>, <www.fairpricestockonline.com>, <www.barneystockstore.com>, <www.interstockstore.com>, <www.primestopstore.com>, <www.agdepotstore.com>, <www.hilltopstockonline.com>, <www.tedstockonline.com>, <www.highstockstore.com>, <www.saveshubstore.com>, <www.topstockdeals.com>, <www.trademartstore.com>, <www.fairdepotonline.com>, <www.denmartonline.com>, <www.nordstockmall.com>, <www.tomasdealsmart.com>, <www.winstockshop.com>, <www.yellowstickersonline.com>, <www.lakeshoremart.com>, <www.wholestocksales.com>, <www.dollarstockstore.com>, <www.easttownstock.com>, <www.savedailyoutlet.com>, <www.primestopstock.online>, <www.paylessdaily.online>, <www.interstock.online>, <www.hilltopstock.online>, <www.fairsaves.online>, <www.fairpricesstock.online>, <www.kingstorestock.com>, <www.rightdealsstock.com>, <www.edealsstock.com>, <www.ebargainsstock.com>, <www.wellstorestock.com>, <www.trademartstore.site>, <www.topstockdeals.site>, <www.topoffersmall.site>, <www.estockdeals.site>, <www.highstockstore.site>, <www.tedstockonline.site>, <www.saveshubstore.site>, <www.ebargainstock.com>, <www.kingstockstore.com>, <www.rightdealstock.com>, <www.edealstock.com>, <www.primestockstop.online>, <www.savedailyoutlet.club>, <www.wholestocksales.club>, <www.bestservemart.com>, <www.fandealsonline.com>, <www.freemakedeals.com>, <www.metadealsmall.com>, <www.paysmartoffers.com>, <www.davestocksales.com>, <www.fairdealstore.com>, <www.opentrademart.com>, <www.sunstorestock.com>, and  <www.wowmarketsales.com>.

denying in part Plaintiff's Motion (Dkt. 108). Specifically, the undersigned recommended default judgment against all Defendants who were natural persons, with the exception of Mr. Kaufman. Mr. Kaufman, a natural person, is alleged to reside in the United States and to be a California resident. Therefore, serving Mr. Kaufman via email, as Plaintiff's had done, was insufficient. The undersigned recommended that Plaintiff be granted the ability to properly serve Mr. Kaufman and again pursue default judgment against him. On October 17, 2018, the district judge adopted the undersigned's Report and Recommendation, (Dkts. 112-13), and instructed Plaintiff that "[t]o proceed against Kaufman, plaintiff must first reinitiate the proper procedure for obtaining an entry of default and subsequently move for default judgment against him" (Dkt. 112 at 7). Now, Plaintiff again moves for Default Judgment against Mr. Kaufman, seeking entrance of a permanent injunction. (Mot. Default. J. at 16.)

## B. Jurisdiction and Venue

Before the Court can render default judgment, it must have both subject-matter jurisdiction and personal jurisdiction over the defaulting party, and venue must be proper.

### 1. *Subject-Matter Jurisdiction*

The Court has subject-matter jurisdiction over the claims in this lawsuit. A federal district court has original jurisdiction when an action involves a civil action "arising under the Constitution, laws, or treatises of the United States." 28 U.S.C. § 1331. In this case, Plaintiff has asserted claims pursuant to the Lanham Act, the CFAA, and the Copyright Act, all of which are federal statutes. (3d Am. Compl. ¶¶ 7, 239-76.) Further, a federal district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). In this case, Plaintiff has asserted claims of common law trademark infringement and unfair competition, which

3

are clearly part of the same case or controversy as the federal claims. (3d Am. Compl. ¶¶ 277-82.) Accordingly, the Court has subject-matter jurisdiction over all claims in this action.

### 2. *Personal Jurisdiction*

The Court has personal jurisdiction over Defendant in this action. In order for the Court to exercise personal jurisdiction, the standards of both federal due process and the forum state's long-arm statute and must be satisfied. See Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012). Federal due process permits personal jurisdiction where a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Virginia's long-arm statute, Virginia Code § 8.01-328.1, "extends the jurisdiction of its courts as far as federal due process permits." ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 176 (4th Cir. 2002). With federal due process and Virginia's long-arm statute requiring the same standards, essentially only one personal jurisdiction inquiry is required. See id. The inquiry to find personal jurisdiction requires either specific jurisdiction "based on conduct connected to the suit" or general jurisdiction based on "continuous and systematic" activities in the forum state. Tire Eng'g & Distrib., 682 F.3d at 301 (quoting ALS Scan, Inc. v. Dig. Serv. Consultants, Inc., 293 F.3d 707, 711 (4th Cir. 2002)).

Personal jurisdiction can exist over a nonresident defendant based on that defendant's Internet contacts with the forum. A state may exercise personal jurisdiction over a nonresident defendant when that defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." ALS Scan, 293 F.3d at 714. However, a state may not exercise personal jurisdiction over a nonresident

defendant when that defendant engages in "passive Internet activity" such as "simply plac[ing] information on the Internet." Id.

Though Mr. Kaufman is not a resident of Virginia, Virginia may exercise personal jurisdiction over Mr. Kaufman based on his Internet contacts. Mr. Kaufman has interacted with a domain name registry located in Virginia in order to maintain all of the Infringing Websites that end in ".com." (3d Am. Compl. ¶¶ 11, 153.) Further, Mr. Kaufman sought to use the Infringing websites, which function as interactive e-commerce websites, to phish for consumers' personal and financial data. (Id. ¶¶ 11, 53-54, 190-91, 196.) Therefore, Defendants directed electronic activity into Virginia with the intent to engage in business and other interactions, and such activity created potential causes of action.

### 3. *Venue*

Venue in this action is proper in this Court. Venue in a court is proper when the action is brought in a judicial district in which any defendant resides if all defendants are residents of the same state or in which a substantial part of the events or omissions giving rise to the action occurred. See 28 U.S.C. § 1391(b). In this case, venue in this Court is proper because a substantial part of the events giving rise to Plaintiff's claims, particularly the harm felt by Plaintiff and the instrumentalities used in maintaining the Infringing Websites, occurred in this Court's judicial district. (3d Am. Compl. ¶ 7.)

### C. Service of Process

Before the Court can render default judgment, it must be satisfied that a defaulting party has been properly served. As a general rule, a defendant must be served with the summons and complaint filed with a federal court. See FED. R. CIV. P. 4. However, various avenues exist to serve a defendant.

Federal Rule of Civil Procedure 4(e)(1) allows service on an individual within a judicial district of the United States pursuant to state law for service in the state where the district court overseeing the lawsuit sits or state law for service in the state where service is made. Under Virginia law, a plaintiff may make service of process on a nonresident of Virginia via the Secretary of the Commonwealth if a court in Virginia can exercise personal jurisdiction over the defendant. Va Code. § 8.01-329(A). In order to properly effectuate service on the Secretary, a plaintiff must file an affidavit with the court, "stating either (i) that the person to be served is a nonresident or (ii) that, after exercising due diligence, the party seeking service has been unable to locate the person to be served. In either case, such affidavit shall set forth the last known address of the person to be served." Id. § 8.01-329(B). Service via the Secretary of the Commonwealth is "effective on the date when service is made on the Secretary." Id. § 8.01-329(C).

In this case, Mr. Kaufman is a nonresident. Additionally, Plaintiff could not locate Mr. Kaufman's whereabouts. (Weigand Decl. ¶ 2.) Therefore, pursuant to the statute, Plaintiff took steps to properly effectuate service on Mr. Kaufman through the Secretary of the Commonwealth. Plaintiff "provided copies of the summons and Third Amended Complaint to the Secretary, filed an affidavit with this Court reflecting service on the Commonwealth, and filed a copy of the return envelope showing" that Mr. Kaufman's California address did not in fact exist. (Mot. Default J. at 9; Weigand Decl. ¶¶ 1-4.) On September 6, 2018, the Secretary served Mr. Kaufman at the California address, and filed a certificate of compliance on September 12, 2018 (Dkt. 110). The documents forwarded to Mr. Kaufman by the Secretary were later returned as undeliverable. (Weigand Decl. ¶¶ 3-4, Ex. A.)

Although the Secretary could not successfully serve Mr. Kaufman, service of process is still proper in this instance. The Fourth Circuit has previously held that if a plaintiff complies "with

6

the statutory provisions [of Virginia law] … [then] sufficiency of process [is] not affected by the failed delivery of notice from the Secretary to the putative defendant." Equip. Fin. Servs., Inc. v. Traverse Comput. Brokers, 973 F.2d 345, 347 (4th Cir. 1992) (holding service of process was sufficient under Virginia's long-arm statute even though service was returned by the post office as undeliverable); see also Aremeni v. Trans Union LLC, Inc., No. 3:15-cv-00066, 2016 WL 4098540, at *4 (W.D. Va. July 28, 2016); cf. Steed v. Commonwealth, 397 S.E.2d 281, 284 (Va. Ct. App. 1990) (holding that the trial court obtained jurisdiction over nonresident defendant "once the affidavit of compliance was filed by the Commissioner of the Division of Motor Vehicles, and the fact that he did not actually receive notice … did not affect the validity of that proceeding"). Therefore, service of process on Mr. Kaufman via the Secretary was proper and effective as of September 5, 2018, the date of Plaintiff's service on the Secretary.

### D. Grounds for Default Judgment

The entry of default judgment may be appropriate when a defendant has failed to appear in a case. See FED. R. CIV. P. 55. To date, Mr. Kaufman has failed to appear personally or by representative or otherwise participate in these proceedings. On October 23, 2018, Plaintiff filed its Request for Clerk's Entry of Default (Dkt. 114), seeking an entry of default for Mr. Kaufman. On October 30, 2018, the Clerk of the Court issued the Entry of Default (Dkt. 115) for Mr. Kaufman. On that same day, Plaintiff filed its Motion for Default Judgment. The Court then held a hearing on Plaintiff's Motion for Default Judgment on November 16, 2018, at which no representative for Mr. Kaufman appeared. Finding the matter uncontested, the Court took the matter under advisement to issue this Report and Recommendation.

### II. FINDINGS OF FACT

Upon a full review of the pleadings and the record in this case, the undersigned finds that

Plaintiff has established the following facts.

Plaintiff is a Delaware limited liability company with its principal place of business in Salt Lake City, Utah. (3d Am. Compl. ¶ 13.) Plaintiff is an online discount retailer that sells household goods and homewares to consumers. (Id. ¶¶ 154-55.) Plaintiff is the owner and operator of its website <www.overstock.com>, through which Plaintiff offers its products for sale to consumers. (Id. ¶¶ 14, 157.) Plaintiff has a computer system that is connected to the Internet and that computer system hosts the content of its website. (Id. ¶¶ 157-58.) Plaintiff has users of its website agree to certain terms and conditions, including that a user must acknowledge that Plaintiff's website contains material that is protected by copyrights, trademarks, and other proprietary rights, and that the content of Plaintiff's website is not to be exploited for any commercial purpose without Plaintiff's express consent. (Id. ¶¶ 159-62.) Plaintiff's continued commercial success is dependent on sales from its website, and so Plaintiff has made large investments in its website to make it a trustworthy and positive online shopping experience for consumers. (Id. ¶¶ 164-65.)

Plaintiff is also the owner of various intellectual properties, including trademarks (the "Overstock Trademarks"), copyrights (the "Overstock Copyrighted Content"), and trade dress (the "Overstock Trade Dress"). (Id. ¶ 14.) Of the Overstock Trademarks, many are registered and appear on the Principal Registrar in the U.S. Patent and Trademark Office (the "USPTO"). (Id. ¶¶ 167, 169, Ex. 2.) Plaintiff also has common law rights to the word "OVERSTOCK" as one of its Overstock Trademarks, having used the word "OVERSTOCK" continuously since its website's inception. (Id. ¶¶ 170-73.) When displaying the word "OVERSTOCK" on its website, Plaintiff places a "TM" symbol in the upper left hand corner of the word "OVERSTOCK." (Id. ¶ 172.) Plaintiff is known nationwide as the exclusive source of online retail services on its website, and consumers have come to associate the Overstock Trademarks with Plaintiff. (Id. ¶¶ 174-75.)

Plaintiff is and has been the sole owner of all rights, title, and interest in and to the Overstock Trademarks. (Id. ¶ 176.) Plaintiff has used the Overstock Trademarks on and in connection with its online retail services on its website both in Virginia and around the world. (Id. ¶¶ 168, 177.) The Overstock Copyrighted Content includes information, data, software, photographs, graphs, videos, typefaces, graphics, music, sound, and other material. (Id. ¶¶ 180-81.) Plaintiff is and has been the sole owner of all rights, title, and interest in and to the Overstock Copyrighted Content. (Id. ¶ 183.) Plaintiff has displayed the Overstock Copyrighted Content on its website and provides a notice of copyright at the bottom of its website's pages. (Id. ¶¶ 180-82.) The Overstock Trade Dress includes the distinctive format and layout of Plaintiff's website, including the Overstock Trademarks, the Overstock Copyrighted Content, red-tab design elements, and a unique shopping ribbon. (Id. ¶¶ 184-85.) Plaintiff has continuously used the Overstock Trade Dress in business on its website. (Id. ¶¶ 186, 189.) Consumers regularly associate the Overstock Trade Dress with Plaintiff. (Id. ¶ 189.)

Mr. Kaufman is a resident of California and is associated with the email address <robert4sh2@gmail.com>. (Id. ¶ 53.) His last known address is 3847 Carson Street, San Diego, California 92121. (Id.) Mr. Kaufman knowingly engaged in an interrelated scheme to "rip" the content of Plaintiff's website, which contains depictions of Plaintiff's trademarks and copyrighted material, and place such content on the Infringing Websites that they have created and operate, without Plaintiff's authorization. (Id. ¶¶ 1, 3-4, 54, 191, 193-98, 204, 218-31.) "Ripping" is the process of copying an entire website, including all of its text, images, videos, and underlying code, so that the copied website is a complete duplication of the original website. (Id. ¶ 2.) To "rip" the contents of Plaintiff's website, Mr. Kaufman gained access Plaintiff's computer system that hosts the content of Plaintiff's website. (Id. ¶¶ 158, 192.) Each of the Infringing Websites is a part of the

"ripping" scheme and each reproduces Overstock Trademarks, Overstock Copyrighted Content, and Overstock Trade Dress. (Id. ¶¶ 19-52, 59-151, 190, 199.) Mr. Kaufman operates the Infringing Websites with the goal of tricking consumers to enter their personal and financial information at the point of sale with no intent to deliver the goods or services advertised. (Id. ¶¶ 4, 6, 54, 151, 191, 196, 200-01.) Of the Infringing Websites, those that end in ".com" are registered at a domain name registry located in Virginia. (Id. ¶ 153.)

Plaintiff discovered the scheme through its own investigation. (Id. ¶ 203.) Plaintiff's investigators attempted to purchase goods from some of the Infringing Websites, through which the investigators submitted financial and personal information, only to learn that payment could not be processed at the time. (Id. ¶¶ 206-08, Ex. 5.) The investigators never received the products they attempted to order from some of the Infringing Websites. (Id. ¶ 209.) However, the investigators did have unauthorized charges made to the credit card used to attempt to purchase goods from some of the Infringing Websites. (Id. ¶ 210.) Plaintiff therefore commenced this action in November 2017 against Mr. Visocky, Mr. Srams, and some of the Infringing Websites, applying for, and obtaining, a temporary restraining order and expedited discovery against this action's original defendants. (Id. ¶ 211.) Through discovery responses from third parties, Plaintiff identified Mr. Kaufman as involved in the scheme, as well as learning of additional Infringing Websites that served the same purpose as the Infringing Websites investigated by Plaintiff's investigators. (Id. ¶¶ 212-17.)

Plaintiff has been harmed by the scheme, as Plaintiff has incurred investigation costs. (Id. ¶ 232.) The scheme also risks harming the value of Plaintiff's Overstock Trademarks, Overstock Copyrighted Content, and Overstock Trade Dress through consumers potentially feeling confused and deceived. (Id. ¶ 233-38.)

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. JTH Tax, Inc. v. Grabert, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001)). Before entering default judgment, however, the Court must evaluate the plaintiff's complaint to ensure that the complaint properly states a claim. GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, it is appropriate to evaluate Plaintiff's claims in its complaint against Mr. Kaufman in accordance with the standards of Federal Rule of Civil Procedure 12(b)(6).

Plaintiff asserts five claims against Mr. Kaufman: (1) federal trademark infringement; (2) violations of the CFAA; (3) copyright infringement; (4) false designation of origin, unfair competition, and trade dress infringement; and (5) common law trademark infringement and unfair competition. (3d Am. Compl. ¶¶ 239-82; Mot. Default J. at 10-16.) The Court considers each claim in term.

### A. Federal Trademark Infringement

Plaintiff asserts claims of federal trademark infringement against Mr. Kaufman pursuant to the Lanham Act, 15 U.S.C. § 1114. (3d Am. Compl. ¶¶ 239-45; Mot. Default J. at 10-12.) The Lanham Act prohibits the use of a colorable imitation of a registered mark in connection with the distribution of goods and services where such use is likely to cause confusion or to deceive. 15 U.S.C. § 1114(1). For a claim of trademark infringement, a plaintiff must show that: (1) it owns a valid mark; (2) the defendant used the mark in commerce and without authorization; (3) that the defendant used the mark, or an imitation of the mark, in connection with the sale, offering for sale,

distribution, or advertising of goods or services, and (4) the defendant's use of a colorable imitation of the mark is likely to cause confusion among consumers. See Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 152 (4th Cir. 2012). To determine the likelihood of confusion, the Fourth Circuit has stated that nine factors should generally be considered:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace;
> (2) the similarity of the two marks to consumers;
> (3) the similarity of the goods or services that the marks identify;
> (4) the similarity of the facilities used by the markholders;
> (5) the similarity of advertising used by the markholders;
> (6) the defendant's intent;
> (7) actual confusion;
> (8) the quality of the defendant's product; and
> (9) the sophistication of the consuming public.

George & Co., LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009) (first citing Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984); and then citing Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 463-64 (4th Cir. 1996)). Despite the numerous factors, "[n]ot all of these factors are of equal importance, 'nor are they always relevant in any given case.'" Id. (quoting Anheuser-Busch, Inc. v. L & L Wings, Inc., 962 F.2d 316, 320 (4th Cir. 1992)). However, when the allegedly infringing mark is nearly an exact imitation of a plaintiff's mark in an apparent attempt to capitalize upon its popularity, "there is a presumption of a likelihood of confusion." Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987).

Here, Plaintiff has sufficiently established facts to support a claim of trademark infringement under the Lanham Act. Plaintiff has established that it has valid marks that are protectable. Plaintiff has registered many Overstock Trademarks as trademarks with the USPTO. (3d Am. Compl. ¶¶ 167-69, Ex. 2.) Plaintiff has also established that the "ripping" of Overstock Trademarks by Mr. Kaufman is likely to confuse consumers, in accordance with the aforementioned factors and considerations. (Id. ¶¶ 4, 54, 151, 191, 196, 200-01, 233-38.)

Plaintiff's Overstock Trademarks are distinctively associated with Plaintiff's online retail business services. (Id. ¶¶ 168, 177.) Mr. Kaufman "ripped" the Overstock Trademarks from Plaintiff's website and displayed the Overstock Trademarks on the Infringing Websites, which they owned and operated. (Id. ¶¶ 1, 3-4, 54, 191, 193-98, 204, 218-31.) The display and functionality of the Infringing Websites imitated Plaintiff's genuine website in display and function. (Id. ¶ 194.) Therefore, default judgment in accordance with Plaintiff's trademark infringement claims is appropriate.

## B. Violations of the CFAA

Plaintiff asserts claims of violations of the CFAA against Mr. Kaufman, specifically pursuant to 18 U.S.C. § 1030(a)(5)(C). (3d Am. Compl. ¶¶ 246-60; Mot. Default J. at 12-13.) The CFAA grants "any person who suffers damage or loss" as a result of a CFAA violation the ability to bring a civil action. 18 U.S.C. § 1030(g). The CFAA prohibits intentionally accessing a protected computer without authorization and causes damage and loss. Id. § 1030(a)(5)(C). A "protected computer" can be one "used in or affecting interstate or foreign commerce or communication." Id. § 1030(e)(2)(B). A corporate computer that is connected to the Internet and hosts website data qualifies as a "protected computer." See Estes Forwarding Worldwide LLC v. Cuellar, 239 F. Supp. 3d 918, 926 (E.D. Va. 2017). Damage from a CFAA violation is defined as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Loss from a CFAA violation is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." Id. § 1030(e)(11).

Here, Plaintiff has sufficiently established facts to support a violation of the CFAA pursuant to 18 U.S.C. § 1030(a)(5)(C). Plaintiff has established that it has a computer system that is connected to the Internet and hosts the content of its website. (3d Am. Compl. ¶¶ 157-58.) Therefore, the computers within Plaintiff's computer system qualify as protected computers under the CFAA. Plaintiff has further established that Mr. Kaufman must have gained access Plaintiff's computer system that hosts the content of Plaintiff's website in order to "rip" the contents of Plaintiff's website. (Id. ¶¶ 158, 192.) Plaintiff has established that Mr. Kaufman did so without authorization. (Id. ¶ 218.) Plaintiff has also established that it has suffered losses as a result of the unauthorized access of its computer system, as Plaintiff has incurred costs through investigating and responding to the scheme that involved accessing Plaintiff's computer system. (Id. ¶ 232.) Such costs of responding to the unauthorized access qualify as a loss under the CFAA. Therefore, default judgment in accordance with Plaintiff's claims of CFAA violations is appropriate.

## C. Copyright Infringement

Plaintiff asserts claims of copyright infringement against Mr. Kaufman pursuant to the Copyright Act, 17 U.S.C. § 106. (3d Am. Compl. ¶¶ 261-67; Pl.'s Mot. Default J. at 13-14.) The Copyright Act provides that only a copyright owner has exclusive rights to its copyrighted works, and anyone who violates the copyright owner's exclusive rights is considered an infringer. See 17 U.S.C. §§ 106, 501(a). For a claim of copyright infringement, a plaintiff must show (1) ownership of the allegedly infringed material and (2) that the alleged infringers violated at least one exclusive right granted to the copyright holders. See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

Here, Plaintiff has sufficiently established facts to support a claim of copyright infringement under the Copyright Act. Plaintiff has established that it is the owner of the Overstock

Copyrighted Content. (3d Am. Compl. ¶ 183.) Furthermore, Plaintiff has established that Mr. Kaufman "ripped" the Overstock Copyrighted Content from Plaintiff's website and displayed it on the Infringing Websites as part of their scheme. (Id. ¶¶ 1, 3-4, 54, 191, 193-98, 204, 218-31.) Therefore, default judgment in accordance with Plaintiff's copyright infringement claim is appropriate.

D. False Designation of Origin, Unfair Competition, and Trade Dress Infringement

Plaintiff asserts claims of false designation of origin, unfair competition, and trade dress infringement against Mr. Kaufman pursuant to the Lanham Act, 15 U.S.C. § 1125(a). (3d Am. Compl. ¶¶ 268-76; Mot. Default J. at 14-15.) The Lanham Act prohibits, among other things, using "in commerce any word, term, name, symbol, or device … or any false designation of origin" that "is likely to cause confusion, or to cause mistake." 15 U.S.C. § 1125(a)(1). For a claim of false designation of origin, unfair competition, and trade dress infringement, a plaintiff must prove that (1) it has a valid, protectable mark and (2) the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers. See Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc., 673 F.3d 294, 300 (4th Cir. 2012). Such a claim is essentially the same as a claim for federal trademark infringement of a registered trademark under the Lanham Act. Nationstar Mortg., LLC v. Ahmad, 155 F. Supp. 3d 585, 592 (E.D. Va. 2015).

Here, like with its claims for federal trademark infringement of registered trademarks, Plaintiff has sufficiently established facts to support claims of false designation of origin, unfair competition, and trade dress infringement under the Lanham Act. Plaintiff has established that it has valid marks that are protectable. Plaintiff has not only registered many Overstock Trademarks as trademarks with the USPTO, but has also established common law rights in the "OVERSTOCK" word trademark. (3d Am. Compl. ¶¶ 167, 169-73, Ex. 2.) Plaintiff has also

established that it has valid marks in aspects of the Overstock Trade Dress. (Id. ¶¶ 184-86, 189.)

Additionally, Plaintiff has established that the "ripping" of Overstock Trademarks and Overstock

Trade Dress by Mr. Kaufman is likely to confuse consumers. (Id. ¶¶ 4, 6, 54, 151, 191, 196, 200-

01, 233-38.) Plaintiff's Overstock Trademarks and Overstock Trade Dress are distinctively

associated with Plaintiff's online retail business services. (Id. ¶¶ 168, 177, 189.) Mr. Kaufman

"ripped" the Overstock Trademarks and the Overstock Trade Dress from Plaintiff's website and

displayed the Overstock Trademarks and the Overstock Trade Dress on the Infringing Websites,

which they owned and operated. (Id. ¶¶ 1, 3-4, 54, 191, 193-98, 204, 218-31.) The display and

functionality of the Infringing Websites imitated Plaintiff's genuine website in display and

function. (Id. ¶ 194.) Therefore, default judgment in accordance with Plaintiff's claims of false

designation of origin, unfair competition, and trade dress infringement are appropriate.

### E. Common Law Trademark Infringement and Unfair Competition

Plaintiff asserts claims of common law trademark infringement and unfair competition

against Mr. Kaufman under Virginia law. (3d Am. Compl. ¶¶ 277-82; Mot. Default J. at 15-16.)[3]

For a claim of trademark infringement and unfair competition under Virginia law, when a plaintiff

owns a registered trademark, a plaintiff must prove that (1) it has a valid, protectable mark and (2)

the defendant's use of a colorable imitation of the trademark is likely to cause confusion among

consumers. See Nationstar Mortg.,155 F. Supp. 3d at 592-93. Such a claim is essentially the same

as a claim for federal trademark infringement of a registered trademark under the Lanham Act. Id.

---

3. The undersigned assumes without deciding that Virginia law applies to the common law trademark infringement and unfair competition claims. When a federal court has supplemental jurisdiction over an action such as this, it must apply the choice-of-law rules of the forum state. See Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); ITCO Corp. v. Michelin Tire Corp., Commercial Div., 722 F.2d 42, 49 n.11 (4th Cir. 1983). For tort claims, Virginia applies "the law of the state in which the wrongful act took place, wherever the effects of that act are felt." Milton v. IIT Research Inst., 138 F.3d 519, 522 (4th Cir. 1998). Plaintiff has failed to provide any specific information as to where the wrongful acts of Mr. Kaufman took place. Therefore, because Plaintiff has provided no information upon which to conduct a formal choice-of-law analysis, the undersigned will utilize Virginia law, as the law of the forum state, to address the common law trademark infringement and unfair competition claims.

at 592.

Here, Plaintiff has sufficiently established facts to support a claim of trademark infringement and unfair competition under Virginia law. Plaintiff has established that it has valid marks that are protectable. Plaintiff has registered many Overstock Trademarks as trademarks with the USPTO. (3d Am. Compl. ¶¶ 167-69, Ex. 2.) Plaintiff has also established that the "ripping" of Overstock Trademarks by Mr. Kaufman is likely to confuse consumers, due to the Overstock Trademark being distinctively associated with Plaintiff's online retail business services, being "ripped" from Plaintiff's website and displayed on the Infringing Websites. (Id. ¶¶ 1, 3-4, 6, 54, 151, 168, 177, 191, 193-98, 200-01, 204, 218-31, 233-38.) Therefore, default judgment in accordance with Plaintiff's common law trademark infringement and unfair competition claims is appropriate.

## IV. REQUESTED RELIEF

In requesting default judgment, Plaintiff seeks a permanent injunction enjoining Mr. Kaufman from continuing the scheme to use websites duplicative of Plaintiff's website, including the currently identified Infringing Websites, in order to trick consumers into providing them private financial and personal information. (Mot. Default J. at 16-17; Dkt. 116-2.)

Both the Lanham Act and the Copyright Act provide that a court may grant injunctions to prevent the infringement of trademarks and copyrights. See 15 U.S.C. § 1116(a); 17 U.S.C. § 502(a). To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

> (1) that it has suffered an irreparable injury;
> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
> (4) that the public interest would not be disserved by a permanent injunction.

Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d 532, 543 (4th Cir. 2007) (citing eBay

Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)). Further, this Court has previously entered injunctions that have restrained individuals and entities, such as Internet services providers, from partaking in certain activities that facilitate a defendant's unlawful actions. See, e.g., Montblanc-Simplo GMBH v. Ilnitsky, 1:17-cv-415 (LMB/TCB), 2018 WL 844401, at *2 (E.D. Va. Feb. 13, 2018); Microsoft Corp. v. Does 1-2, No. 1:16-cv-00993 (GBL/TCB), 2017 WL 3605317, at *1-2 (E.D. Va. Aug. 22, 2017).

The undersigned determines that a permanent injunction as requested by Plaintiff is appropriate against Mr. Kaufman, as all four elements of the Fourth Circuit's test for a permanent injunction are satisfied. First, Plaintiff suffered and continues to suffer irreparable injury as Mr. Kaufman has infringed its trademarks and copyrighted works through extensive and coordinated use of electronic means to imitate Plaintiff's website and online retail business structure, which, as previously stated, creates a likelihood of confusion among consumers. Moreover, in the context of trademark infringement, "[a] finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 938 (4th Cir. 1995) (citation omitted). With regards to copyright infringement, "[i]rreparable injury often derives from the nature of copyright violations, which deprive the copyright holder of intangible exclusive rights." Christopher Phelps, 492 F.3d at 544. Therefore, the undersigned's aforementioned determination that Mr. Kaufman infringed Plaintiff's Overstock Trademarks, Overstock Copyrighted Content, and Overstock Trade Dress further supports a finding of irreparable injury.

Second, other remedies available at law are inadequate to compensate Plaintiff. Despite repeated attempts to communicate with and get Mr. Kaufman to participate in this lawsuit, he has failed to respond. The lack of an appropriate response shows a threat of continued infringement,

18

as well as a likely lack of cooperation by Mr. Kaufman with any remedy short of a permanent injunction.

Third, the only hardship that would befall Mr. Kaufman by granting Plaintiff's requested permanent injunction would be the requirement to follow clearly established trademark and copyright law. Therefore, the balance of hardships weighs in Plaintiff's favor, as Mr. Kaufman would face barely any hardship at all.

Fourth and finally, public interest favors an injunction. An injunction would prevent the public from being confused by the trademark and copyright infringement generated by Mr. Kaufman. An injunction would also maintain the integrity of Plaintiff's well-known Overstock Trademarks and Overstock Copyrighted Content.

For the aforementioned reasons, the undersigned finds that Plaintiff's requested permanent injunction is the best means to prevent Mr. Kaufman from future infringement. Therefore, Plaintiff's requested injunction should be granted.

## V. <u>RECOMMENDATION</u>

For the reasons stated above, the undersigned U.S. Magistrate Judge recommends that Plaintiff's Motion for Default Judgment be GRANTED.

The undersigned further recommends that Plaintiff's requested permanent injunction and other requested relief, as described in Plaintiff's Proposed Order Granting Default Judgment and Entering Permanent Injunction Against Edward Kaufman (Dkt. 116-2), be granted.

VI. <u>NOTICE</u>

The parties are advised that objections to this Report and Recommendation, pursuant to

28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within

fourteen (14) days of its service. Failure to object to this Report and Recommendation waives

appellate review of any judgment based on it.

The Clerk is directed to mail a copy of this Report and Recommendation to the following

address of record associated with Mr. Kaufman:

> Edward M. Kaufman
> 3847 Carson Street
> San Diego, CA 92121

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

December _____, 2018
Alexandria, Virginia

20